IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| JPMorgan Chase Bank, N.A., | ) | C/A No. 3:12-2363-MBS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER AND OPINION** |
| | ) | |
| Timothy R. Guertin and Robin Guertin, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

JPMorgan Chase Bank, N.A. ("Plaintiff") filed the within action on August 17, 2012, alleging that Timothy R. Guertin ("Mr. Guertin") and Robin Guertin ("Ms. Guertin") (collectively "Defendants") breached their contractual obligations under a promissory note. ECF No. 1. On October 2, 2012, Defendants filed an amended answer and a counterclaim that alleged a violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"). This matter is before the court on Plaintiff's motion to dismiss Defendants' counterclaim, which motion was filed on October 3, 2012. ECF No. 16. On October 22, 2012, Defendants responded. ECF No. 19. Plaintiff replied on October 24, 2012. ECF No. 20.

### I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The following facts are according to Defendants' counterclaim. Around October 2004, Defendants entered the market for a new home. ECF No. 14 at 1. Defendants decided to purchase an "on-frame modular home" from Magnolia Bay Homes, LLC ("Magnolia") that Magnolia represented as being distinct from a mobile home. *Id.* Thereafter, Defendants began the home loan application process. *Id.* at 2. In order to increase Defendants' income, thereby improving their chances of qualifying for a larger loan, Magnolia convinced Defendants to lease

their then-owned mobile home to an employee of Magnolia at a monthly rate of $400.00. *Id.* On November 12, 2004, Defendants and Magnolia executed a contract for the purchase of a modular home for $140,000. *Id.*

On January 2, 2005, Ms. Guertin was admitted to the Kershaw County Medical Center where she was treated for pneumonia. *Id.* Ms. Guertin was discharged on January 7, 2005, but readmitted on January 18, 2005, due to continuing symptoms. *Id.* On January 21, 2005, Magnolia went to the Kershaw County Medical Center to meet with Ms. Guertin and close on the contract to purchase the "on-frame modular home." *Id.* At the time, Ms. Guertin was on medication that impaired her ability to understand the consequences of her actions. *Id.* at 3. As a result, Ms. Guertin signed documents that executed a note and mortgage (the "Promissory Note") in favor of Mortgage Electronic Registration Systems ("MERS") solely as nominee for American Home Mortgage, Inc. ("American"). *Id.*

When Magnolia delivered the "on-frame modular home," Defendants realized that what they had purchased was, contrary to Magnolia's earlier representations, a mobile home. *Id.* at 3. Thereafter, Defendants brought an action in state court against Magnolia; Champion Home Builders, Co.; American; National City Mortgage Co.; MERS, and several individually-named defendants. *Id.* While the state court lawsuit was pending, National City Mortgage Co., American, and J.P Morgan Acquisition Corp. brought separate foreclosure actions against Defendants, each of which resulted in a dismissal. *Id.* at 3-5.

## II. STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S.

662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (citing *Twombly*, 550 U.S. 556). The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* (citing *Twombly*, 550 U.S. at 556). Although a complaint need not set forth detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555. Factual allegations must be enough to raise a right to relief above the speculative level. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679.

### III. DISCUSSION

Plaintiff moves pursuant to Rule 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE to dismiss Defendants' counterclaim for failure to state a claim upon which relief can be granted.

SCUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." S.C. Code Ann. § 39–5–20(a). In order to recover under SCUTPA, a plaintiff must establish that: (1) the defendant engaged in an unlawful trade practice; (2) the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice; and (3) the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest. *See Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 291 (4th Cir. 1998).

Defendants allege that "[t]he actions of Plaintiff . . . constitute unfair and deceptive acts and practices . . . ." ECF No. 14 at 10. In this regard, Defendants allege that "[b]y virtue of the principles of assignee liability, the aforementioned actions and activities described herein may be imputed to Plaintiff as the purported holder not in due course of the note at issue." ECF No. 14 at 10. Defendants cite authority establishing that an assignee of a promissory note holds the note subject to any defense that the maker of the note would have had against the original obligee, unless the assignee is a holder in due course. *See, e.g.*, *Rosemond v. Campbell*, 343 S.E.2d 641, 634, 645 (S.C. Ct. App. 1986). The *Rosemond* court observed that, "as against the assignee, the obligor can only assert a claim defensively when the assignee seeks to enforce the obligation; he has no common law right to sue the assignee affirmatively on a claim against the assignor arising from the underlying obligation." *Id.* Defendants cite no authority, nor does the court find any, to support the proposition that a subsequent assignee is imputed with and can be held liable for the wrongful conduct of a promissory note's original obligee. Even if that were the law, Defendants' counterclaim would still fail to state a claim. Although Defendants' counterclaim includes substantial allegations describing Magnolia's alleged misconduct, the allegations do not identify any conduct that amounts to an unfair or deceptive trade practice on the part of the Promissory Note's original obligee, American, that could be imputed to Plaintiff. Moreover, the allegations do not allege any conduct on Plaintiff's part that constitutes an unfair or deceptive trade practice.

Accordingly, the court concludes that Defendants' counterclaim fails to state a claim upon which relief can be granted.

4

## IV. CONCLUSION

For the reasons above, Plaintiff's motion to dismiss Defendants' counterclaim is granted.

**IT IS SO ORDERED.**

                                                s/ Margaret B. Seymour
                                                Margaret B. Seymour
                                                Chief United States District Judge

Columbia, South Carolina
November 15, 2012