IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| JP Morgan Mortgage Acquisition Corp., | Civil Action No. 3:12-cv-02363-JFA |
| Plaintiff, | |
| v. | |
| Timothy R. Guertin and Robin Guertin, | **ORDER** |
| Defendants. | |

This matter comes before the court on Plaintiff's Motion for Summary Judgment. (ECF No. 83). Plaintiff J.P. Morgan Mortgage Acquisition Corporation ("Plaintiff") argues that Timothy and Robin Guertin ("Defendants") are liable on an adjustable rate note, which Plaintiff holds as bearer paper. American Home Mortgage ("American") was the original holder of the note, and then assigned the note to Plaintiff. Defendants argue that they are able to assert the following defenses, making the note unenforceable: unclean hands, duress, fraud, fraudulent misrepresentation, and *in pari delicto*. Plaintiff argues, among other things, that the basis of any such defense comes from the actions of Defendants or a third party, and that those actions may not be imputed on Plaintiff.

I.   **Factual and Procedural History**

The court previously heard argument on Plaintiff's motion for summary judgment, and the court extended discovery to allow for the parties to find more information related to the agency issues in the case. Particularly, the court wanted to know the relationship between Magnolia, the company that sold a home to Defendants, and American, the original holder of the Note. There was also a dispute as to the authenticity of the Note, which has now been resolved.

1

Around October 2004, Defendants entered the market for a new home. Defendants decided to purchase an "on-frame modular home" from Magnolia Bay Homes, LLC ("Magnolia"). Defendants assert that Magnolia represented the "on-frame modular home" as distinct from a mobile home, but that the home Magnolia sold Defendants was truly a mobile home. Magnolia is *not* a party to this action.

In order to purchase the home, Defendants began the home loan application process. Defendants allege that Magnolia employees convinced the Defendants to rent the mobile home Defendants had been living in to a Magnolia employee for $400 per month, so that income could be used to qualify the Defendants for a loan to purchase the on-frame modular home. Defendants also allege that Stephanie Gardner, a loan officer for American, then falsified another copy of the lease to show that the monthly rent amount for the mobile home was $800 per month. Additionally, Defendants allege that Ms. Gardner showed their monthly mortgage payment on the mobile home they were living in as "rent," instead of as a mortgage payment, giving the illusion that the monthly rental liability would disappear once Defendants moved in to their new home. Defendants allege that several Magnolia employees, including principals, later pleaded guilty to aiding and abetting mortgage fraud in federal court.

In addition to alleging that Magnolia and Ms. Gardner fraudulently overstated the Defendants' income and misrepresented the nature of the modular home, Defendants allege that Magnolia officials came to the hospital where Ms. Guertin was receiving treatment to execute the home loan and mortgage documents. Ms. Guertin and Mr. Guertin executed the January 21, 2005 adjustable rate note ("Note") at issue here in the hospital. Ms. Guertin testified in her deposition to feeling tired during the execution of the documents, and Mr. Guertin testified to feeling coerced in to signing the documents. Defendants also argue that because the Guertins, a

truck driver and a former janitor, are financially unsophisticated, the Note should not be enforceable. Defendants do not dispute that the Note was executed and would be binding, but for the defenses raised.

Defendants counterclaimed under the South Carolina Unfair Trade Practices Act. Another judge dismissed that claim, finding that "[a]lthough Defendants' counterclaim includes substantial allegations describing Magnolia's alleged misconduct, the allegations do not identify any conduct that amounts to an unfair or deceptive trade practice on the part of the Promissory Note's original obligee, American [Home Mortgage Inc. ("American")], that could be imputed to Plaintiff." ECF No. 22 at p. 4. Similarly, Plaintiff argues here that the actions of Magnolia and American's loan officer may not be imputed on Plaintiff.

## II.     Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered when a moving party has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Summary judgment should be granted in those cases where it is clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. *McKinney v. Bd. of Trs. of Mayland Cmty. Coll.*, 955 F.2d 924, 928 (4th Cir. 1992). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**III.    Analysis**

Plaintiff's Motion for Summary Judgment is essentially a motion for judgment on the plain language of the Note and argument that none of Defendant's defenses are applicable. Plaintiff argues that Defendants have defaulted, the Note is overdue, and that Plaintiff is entitled to immediate payment of all sums due under the Note.

The Note was indorsed in blank by American and was therefore converted to bearer paper. "When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." S.C. Code Ann. § 36-3-205(b) (2009). "Possession of a bearer instrument is *prima facie* evidence of ownership." *In re Woodberry,* 383 B.R. 373, 377 (D.S.C. 2008). "The owner or holder of a note has a right to payment." *Id*. at 378. Because Plaintiff has established a right to payment under the Note, we next turn to Defendants' affirmative defenses.

Defendants argue that the actions of Magnolia and Ms. Gardner amount to fraud or duress and invalidate the obligation of Defendants to pay on the Note. Plaintiff argues that the bad actions of Magnolia and Ms. Gardner cannot be imputed on the original holder of the Note, American.  Therefore, Plaintiff argues that those defenses cannot be asserted against a subsequent holder of the Note. The fraud and fraudulent misrepresentation defenses stem from the alleged misrepresentations contained in the loan application, as well as Defendants' claim that the home purchased was a mobile home instead of a modular home. The duress defense stems from the execution of the Note while Ms. Guertin was in the hospital.

The record shows very little about the relationship between Magnolia and American. Particularly, there is very little information on the employment arrangement between Stephanie Gardner, American's loan officer, and American or Magnolia. The record does show that

4

Defendants met with Ms. Gardner to complete the loan application at Magnolia's offices. Similarly, there is little information in the record as to the source of the false statements contained in the loan application. Instead, Defendants make arguments that Defendants are unsophisticated consumers who merely did what they were told by the loan officer.

Defendants have not met their burden in showing that Ms. Gardner or Magnolia were acting on behalf of American. Even if Ms. Gardner induced Defendants to make fraudulent statements on their loan application, Defendants signed the loan application, attesting to its veracity. "A person signing a document is responsible for reading the document and making sure of its contents. Every contracting party owes a duty to the other party to the contract and to the public to learn the contents of a document before he signs it." *Regions Bank v. Schmauch*, 354 S.C. 648, 663 (S.C. Ct. App. 2003). On the face of the loan application alone, it seems that the fraudulent statement was made by the Guertins to American.

As to the misrepresentation of the type of home, the record is clear that Ms. Gardner did not—nor did anyone else affiliated with American—warrant or explain what type of home Defendants were purchasing. All allegations that Defendants received a different type of home than intended are directed towards Magnolia, not American. Moreover, presenting Defendants with a home different than the one purchased is merely a breach of contract, not fraud. *Woodward v. Todd*, 270 S.C. 82, 86 (S.C. 1978) ("The general rule is that fraud must relate to a present or pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events. However, where one promises to do a certain thing, having at the time no intention of keeping his agreement, it is a fraudulent misrepresentation of a fact, and actionable as such."). Here there is no evidence that Magnolia—even if it could bind American—intended to deceive Defendants into purchasing a mobile home, not a modular home.

Defendants' duress defense also fails. "In order to establish that a contract was procured through duress, three things must be proved: (1) coercion; (2) putting a person in such fear that he is bereft of the quality of mind essential to the making of a contract; and (3) that the contract was thereby obtained as a result of this state of mind." *In re Nightingale's Estate*, 182 S.C. 527 (S.C. 1937). Ms. Guertin's testimony is that she was getting tired in the course of closing and executing the Note. This does not show that the Note was obtained under circumstances that rise to the level of duress.

Defendants' equitable defenses must also fail. Unclean hands fails because the cause of action on the Note is an action at law. *Aaron v. Mahl*, 381 S.C. 585, 594 (S.C. 2009) ("The equitable doctrine of unclean hands, however, has no application to an action at law."); *Chambers v. Pingree*, 351 S.C. 442, 449 (S.C. Ct. App. 2002) ("An action to recover on a promissory note is also an action at law."). *In pari delicto* must fail because, as discussed already, there has been no showing of wrongdoing by American or Plaintiff. *Myatt v. RHBT Fin. Corp.*, 370 S.C. 391, 395 (S.C. Ct. App. 2006) ("The doctrine of in pari delicto is '[t]he principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing.'").

### IV. Conclusion and Recommendation

The court grants Plaintiff's Motion for Summary Judgment in its entirety. This case is therefore dismissed, *with prejudice*. The total amount due under the Note as of the date of this judgment is $203,460.63. Post-judgment interest shall accrue in accordance with 28 U.S.C. 1961.

IT IS SO ORDERED.

April 9, 2014                                    Joseph F. Anderson, Jr.
Columbia, South Carolina                         United States District Judge